# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# Case No. 1:10-CV-014

| | |
|---|---|
| ROBERT KEITH WHITE, II, | ) |
|         Plaintiff, | ) |
|    v. | ) |
| VAN DUNCAN, Sheriff; AARON ZAVAL; RON WRIGHT, Deputy Sheriff; ADAM BARTLETT, Deputy Sheriff; JOHN GUACCI, Deputy Sheriff; JUSTIN PRIDGEN, Deputy Sheriff; STEWART HIGGINS, Deputy Sheriff; TODD SCHUPP, Deputy Sheriff; and WESTERN SURETY COMPANY; | ) **ORDER RE: DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
|         Defendants. | ) |

**THIS MATTER** is before the Court upon Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted Pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' Motion to Dismiss is **DENIED**.

## I. FACTUAL BACKGROUND

At approximately 8:00AM on April 24, 2007, Plaintiff was—in violation of Buncombe County Detention Center policy—lying under the covers of his bed after breakfast was served. Plaintiff was consequently reprimanded for violating the policy. Later that day, two officers spoke with Plaintiff. During this conversation, Plaintiff assaulted one of the officers, landing "several strikes to [the officer's] head." *State v. White*, No. COA09-475, 2009 WL 4576382, at *1 (N.C. Ct. App. Dec. 8, 2009).[1]

---

[1] As a result of this event, Defendant was charged with assault on a law enforcement officer inflicting serious injury, and of being a habitual felon. Defendant was sentenced to 133 to 169

1

The next day, Plaintiff claims he was awoken by a "banging on [his] cell door."[2] (Doc. 1, 6.) Plaintiff identified deputy sheriffs Aaron Zaval, Ron Wright, Todd Schupp, Stewart Higgins, John Guacci, Adam Bartlett and Justin Pridgen as the guards waiting for him outside his door. *Id.* Plaintiff further claims that Sergeant Zaval ordered Plaintiff to exit the cell without being restrained, which is strictly against Buncombe policy. *Id.* Plaintiff refused, fearing that he would be charged for yet another crime. *Id.* at 7. The two men argued until Sergeant Zaval signaled the other officers to taze Plaintiff. *Id.*

Eventually Plaintiff fell to the floor, where—according to Plaintiff—he was brutally and severely beaten by Officers Pridgen, Guacci, Bartlett, and Schupp. *Id.* at 7–8. Plaintiff further alleges that he was kicked repeatedly until he lost consciousness. *Id.* at 8. He also claims that his clothes were ripped off by the officers who left him to "lay in a puddle of [his] own blood," *id.* at 9, and that the officers left him in a restraint chair without medical attention for almost nine hours until a commanding officer had him taken to a hospital. *Id.* at 10. At the hospital, Plaintiff was treated for his injuries and diagnosed with a nasal fracture. (Doc. 26, 4.) After returning to Buncombe, Plaintiff maintains that he wrote a three page grievance to which he did not receive a response. (Doc. 1, 11.)

## II. LEGAL STANDARD

When evaluating a ;561;561Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matakari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see Jenkins v. McKeithen*, 395 U.S. 411,

---

months, and appealed shortly thereafter. *State v. White*, No. COA09-475, 2009 WL 4576382, at *2 (N.C. Ct. App. Dec. 8, 2009). His sentence was affirmed by the North Carolina Court of Appeals. *Id.*

[2] The parties agree that Plaintiff was a pre-trial detainee at the time of the following events. (Doc. 26, 5.)

421–22 (1969) (the Court should liberally construe the allegations in the Complaint in Plaintiff's favor). The liberal notice pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure applies to Plaintiff's Section 1983 claim. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167–68 (1993). However, Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. Plaintiff's Complaint will survive a ;667;667Rule 12(b)(6) motion to dismiss if it contains enough facts to "state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949.

### III. DISCUSSION

**A.     Liability Under Section 1983**

   1.   Exhaustion

An inmate may not bring a Section 1983 action unless he has exhausted available administrative remedies. 42 U.S.C. § 1997e(a) (2006). Plaintiff contends that he attempted to utilize these procedures by filing a grievance. On this limited record, the Court cannot adequately determine what happened to Plaintiff's purported grievance. Viewing Plaintiff's allegations in a light most favorable to him, the Court concludes that Plaintiff has attempted to utilize administrative grievance procedures, and that his grievances have been ignored.[3] Should

---

[3] In the alternative, Plaintiff argues that prison officials denied him his First Amendment right to file a grievance. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

the parties later discover that Plaintiff did not take advantage of available administrative remedies, then that issue may be raised at that time via a motion for summary judgment. At the present moment, however, dismissal for failure to exhaust administrative remedies is improper.

### 2. Liability of Sheriff Duncan for the Acts of his Deputies

The general rule is that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691.

There are two notable exceptions to this general rule. First, a local government may be sued under § 1983 under a government policy or custom theory; this occurs "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent officially policy, [violates § 1983]." *Id.* at 694; *e.g.*, *Parnell v. Waldrep*, 538 F. Supp. 1203, 1205 (W.D.N.C. 1982) (county's refusal to make prison conditions constitutionally adequate because of a lack of funding constitutes an official position under *Monell*, and renders the county liable under § 1983).

Second, is the theory of supervisory liability, which imposes liability against "supervisory officials . . . in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (citations omitted).

Liability in both of these contexts is not based on *respondeat superior*. *Monell*, 436 U.S. at 691 (policy or custom liability not based on *respondeat superior*); *Slakan*, 737 F.2d at 372 (supervisory liability is based on "a recognition that supervisory indifference . . . may be a causative factor in the constitutional injuries they inflict on those committed to their care.").

4

In this case, Plaintiff alleges that there is a pattern of incidents like these involving the subordinates of Sheriff Duncan. (Doc. 29, 9.) Plaintiff also alleges that Sheriff Duncan "had sufficient knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional harm to inmates like Plaintiff." *Id.* If true, Plaintiff's allegations certainly state a claim under § 1983. For this reason, Plaintiff will be permitted to discover whether the conduct is—as he puts it—"sufficiently widespread" to warrant relief under Section 1983. *Id.*

**B.     Plaintiff's Section 1983 Claims**

    1.  <u>Plaintiff's Excessive Force Claim</u>

Plaintiff's excessive force claim is not governed by the Fourth Amendment, but instead is governed by the Fourteenth Amendment. *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (pretrial detainee's excessive force claim is governed by the Due Process Clause). Plaintiff's error, however, is not significant enough to justify dismissing it for failure to state a claim. *See Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003). Plaintiff has given Defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman*, 507 U.S. at 168 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). Plaintiff's Complaint—which claims that he suffered an unprovoked assault by prison guards while in their custody—put Defendant on notice of his Section 1983 claim and the "grounds upon which it rests." *Id.* For this reason, Defendant's motion to dismiss Plaintiff's excessive force claim is denied.

    2.  <u>Plaintiff's Claims of Deliberate Indifference in Providing Treatment for Plaintiff's Alleged Serious Medical Needs</u>

In a similar vein, Plaintiff contends that Defendants acted with deliberate indifference when they failed to attend to his injuries after his assault. (Doc. 29, 11.) To state a claim for

5

failure to provide medical treatment, Plaintiff must allege that (1) the medical need was objectively serious; and (2) that the guards failed to act in the face of a subjectively known risk. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).

Plaintiff argues that his injuries—which include a nasal fracture—were objectively serious. Whether Plaintiff's injuries were objectively serious will remain unclear until discovery.[4] Moreover, whether his medical need was objectively serious is an argument on the *merits*; it does not go to Plaintiff's failure to state a claim.

Also, Plaintiff's Complaint adequately alleges that the guards failed to act in the face of a subjectively known risk. In particular, Plaintiff "clearly alleges a prison nurse requested that Plaintiff be removed from the restraint chair" because of Plaintiff's condition after the assault. (Doc. 29, 12.) The Court is satisfied that Plaintiff is entitled to proceed with discovery to fully develop and support the seriousness of his injuries. Therefore, Defendant's motion to dismiss Plaintiff's deliberate indifference claim is denied.

3. Plaintiff's First Amendment Claims

Plaintiff adequately pleads a § 1983 claim for the denial of his First Amendment right to file grievances and communicate with loved ones from prison. Inmates may not be "deprived of visits from attorneys, mail from courts and attorneys, telephone calls to attorneys, writing materials or legal papers, as these are the rudiments of the exercise of the constitutional right to petition for redress of grievances." *Id.* at 423; *see Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (the First Amendment protects an inmate's right to file grievances complaining about prison official misconduct); *United States v. Stotts*, 925 F.2d 83, 86 (4th Cir. 1991). Pretrial

---

[4] The only confirmed injury that the parties have established at this point in the litigation is Plaintiff's nasal fracture. This injury alone is enough for Plaintiff's claim to survive a 12(b)(6) motion.

detainees have a right to communicate with loved ones independent of their right to communicate with the courts. *Berch v. Stahl*, 373 F. Supp. 412, 424 (W.D.N.C. 1974).

### i. Communication with Loved Ones

Plaintiff alleges that his mail and communication privileges with his family were denied. (Doc. 29, 5.) Whether this denial can be justified by a compelling governmental interest is an argument on the merits. Taking Plaintiff's allegation in a light most favorable to him, his claims survive Defendant's motion to dismiss.

### ii. Filing Grievances

Plaintiff asserts that "he was initially denied access to a grievance procedure and when he ultimately was given access to writing material he immediately wrote a three page grievance to which he never received a response." (Doc. 29, 7.) Plaintiff's First Amendment rights were violated if his grievance was never filed by prison officials. At this stage in the litigation, it is not clear what—if anything—came of Plaintiff's grievance. If true, Plaintiff states a cognizable First Amendment claim under Section 1983. Accordingly, Plaintiff's claim survives Defendant's motion to dismiss.

### 4. Plaintiff's Equal Protection Claim

Plaintiff's Equal Protection claim survives Defendant's Rule 12(b)(6) motion. Plaintiff, an African-American, is a member of a suspect class for the purpose of Equal Protection analysis. (Doc. 29, 8.) Plaintiff alleges that during his assault, he was subject to "slurs by some of the officers, in what [Plaintiff] believe[d] was an attempt to goad [him] into fighting back." (Doc. 1, 9.) The use of slurs raises an inference that Plaintiff may have been targeted for this assault because of his race. Admittedly, this claim is on the periphery of what survives a Rule 12(b)(6) motion. Nevertheless, Plaintiff's Equal Protection claim "is plausible on its face,"

*Ashcroft*, 129 S. Ct. at 1949; it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Consequently, Defendant's motion to dismiss Plaintiff's Equal Protection claim is denied.

### C. Plaintiff's State Law Claims Under N.C. Gen. Stat. § 162-55 Against Sheriff Duncan

North Carolina law provides that "[i]f the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured, but shall be guilty of a Class I misdemeanor." N.C. Gen. Stat. § 162-55 (2009). The statute contemplates a higher standard of culpability; the jailor must act with—at the very least—criminal negligence. *Ramsey v. Schauble*, 141 F. Supp. 2d 584, 591 (W.D.N.C. 2001). Criminal negligence is defined as "such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others." *Letchworth v. Gay*, 874 F. Supp. 107, 109 (E.D.N.C. 1995). Under N.C. Gen. Stat. § 162-55, Sheriff Duncan may be liable under the principle of *respondeat superior* for the acts of his deputies. *Ramsey*, 141 F. Supp. 2d at 591 (citing *Davis v. Moore*, 2 S.E.2d 366, 368 (N.C. 1939)). *But cf. Bennett v. Gravelle*, 323 F.Supp. 203, 214–15 (D. Md. 1971) ("[T]he doctrine of *respondeat superior* has no place [under Section 1983] for personal involvement is contemplated.") (internal quotation marks omitted), *aff'd* 451 F.2d 1011 (4th Cir. 1971).

Plaintiff, having already made out a claim for excessive force and deliberate indifference, has sufficiently pled a § 162-55 claim. Therefore, Defendants' motion to dismiss Plaintiff's § 162-55 is denied.

### IV. Conclusion

**THEREFORE,** for the reasons set forth in this order, Defendant's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Signed: July 15, 2010

Graham C. Mullen
United States District Judge